**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Chunhong Jia, *et al.*,

       Plaintiffs,                             Case No. 1:18cv520

       v.                                             Judge Michael R. Barrett

Boardwalk Fresh
Burgers & Fries, Inc., *et al.*,

       Defendants.

## **OPINION & ORDER**

This matter is before the Court upon Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. (Doc. 14). Plaintiffs have filed a Response in Opposition (Doc. 16) and Defendants filed a Reply (Doc. 19). Also before the Court is Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss. (Doc. 20).

### **I.**    **BACKGROUND**

This matter is related to another case filed before this Court: *Chunhong Jia, et al., v. Gary Chan, et al.*, Case No. 1:18-cv-00085-MRB (S.D. Ohio). Defendants Boardwalk Fresh Burgers & Fries, Inc. ("BFBF") and David DiFerdinando are not parties to that case. Both cases stem from alleged fraudulent scheme perpetrated by Gary Chan, Terry Chan, and Jacquelyn Chan ("the Chans") and businesses controlled by the Chans. The Chans are not parties to this case.

Defendant DiFerdinando is a citizen and resident of the State of Florida. (Doc. 10, ¶ 3). DiFerdinando is the president of BFBF. (Id.) BFBF is a Delaware corporation with

its principal place of business in Columbia, Maryland. (Id. ¶ 2). BFBF is a franchisor of fast casual restaurants. (Doc. 18-1, David DiFerdinando Dep. at 17, 25).

In 2013, DiFermando was introduced to Terry Chan by a mutual friend. (Doc. 10, ¶ 15). Defendants began collaborating on the development of several BFBF franchises in Ohio. (Id.) Terry Chan explained that the franchises would be marketed to EB-5 investors. (DiFerdinando Dep. at 42). The EB-5 program allows such investors to gain lawful residency in the United States. (Doc. 10, ¶¶ 1, 11). BFBF entered into a development agent agreement ("Development Agreement") with Jardin Hill, LLC, an entity controlled by the Chans. (Id. ¶¶ 15-16, 70). (DiFerdinando Dep. at 35-36). Jardin Hill agreed to pay $300,000 to BFBF in exchange for the exclusive right to market BFBF franchisees in southern Ohio, plus an additional $30,000 for a franchise to be operated by Jardin Hill. (Doc. 18-1, DiFerdinando Dep. at 34-35).

According to the Amended Complaint, Defendants and the Chans agreed to create Boardwalk Fries Opportunities, L.P. ("BWF OPP"), an Ohio limited partnership that would market the franchises; BWF MGMT, LLC ("BWF MGMT"), an Ohio limited liability company that would act as BWF OPP's general partner; and Boardwalk Fries, LLC ("Boardwalk LLC"), an Ohio limited liability company that would control BWF MGMT. (Doc. 10, ¶¶ 2, 16, 33). The Chans and DiFerdinando signed an Operations Management Agreement on behalf of Boardwalk LLC. (Doc. 10, ¶ 21). Under the Operations Management Agreement, BWF MGMT was to perform certain duties for BWF OPP, including providing executive and strategic oversight, restaurant staff training, assistance in meeting the EB-5 program requirements, and providing information regarding BWBF

franchises. (Doc. 10, ¶ 22). Defendants agreed that the first BWF OPP restaurant would be opened in Cincinnati. (Doc. 10, ¶ 20).

Plaintiffs are citizens and residents of the People's Republic of China. (Doc. 10, ¶ 1). Plaintiffs allege that Defendants, conspiring with the Chans, used the EB-5 program to lure each Plaintiff into investing $500,000 in BWF OPP as part of a development project that was supposed to develop BWBF restaurant locations in the Cincinnati and Dayton. (Doc. 10, ¶ 14). Instead of investing these funds, Plaintiffs claims that Gary Chan transferred $500,000 from each Plaintiffs' escrow account in October 2015, and misappropriated these funds. (Doc. 10, ¶¶ 14, 66-67). Even though DiFerdinando came to Cincinnati to tour the market and scout locations for Ohio BWBF restaurants, a BFBF franchise was never opened in Ohio. (Doc. 10, ¶¶ 73, 74).

In their Amended Complaint, Plaintiffs bring claims for breach of contract, unjust enrichment/quantum meruit, gross negligence, breach of fiduciary duty, conversion, fraud, conspiracy, piercing the corporate veil, and punitive damages. Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(2) based on lack of personal jurisdiction; and alternatively, Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Amended Complaint fails to state a claim for relief.

## II. ANALYSIS

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may seek dismissal if the court lacks personal jurisdiction over that defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v.*

*Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as this Court does here, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen*, 282 F.3d at 887) (internal citation omitted).

"Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 930 N.E.2d 784, 790 (2010); *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541, 543 (1994)).

Under Ohio's long-arm statute, a court "may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:"

(1) Transacting any business in this state,

. . .

(2) Contracted to supply services or goods in Ohio,

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state, . . .

Ohio Rev. Code § 2307.382(A).

Under Ohio's long-arm statute, the term "transacting any business" has been given broad interpretation. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio

4

St.3d 73, 75, 559 N.E.2d 477 (Ohio 1990). "The word 'transact' used in the long-arm statute is broader than the term 'contract' and embraces in its meaning 'to carry on business' and 'to have dealings.'" *Franklin Prods., Inc. v. Gen. Nutrition Corp.*, No. 2:05-CV-1061, 2007 WL 2462665, at *4 (S.D. Ohio Aug. 27, 2007) (quoting *Mustang Tractor & Equip. Co. v. Sound Envt'l Serv., Inc.*, 727 N.E.2d 977, 981 (Ohio Com. Pl. 1999)). In determining what constitutes "transacting business," courts typically consider two factors: (1) whether the defendant initiated the "business dealing," and (2) whether the parties conducted their negotiations in Ohio or with terms affecting Ohio. *Thomas v. Dykstra*, 309 F. Supp. 3d 480, 484 (N.D. Ohio 2018) (citing *Shaker Constr. Grp., LLC v. Schilling*, 2008 WL 4346777, at *3 (S.D. Ohio 2008)).

As to whether jurisdiction is proper under the Federal Due Process Clause, the Sixth Circuit has a three-part test for determining whether due process permits the exercise of personal jurisdiction over a defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

None of the parties named in this litigation are residents of Ohio. While BWF OPP, BWF MGMT, LLC, and Boardwalk LLC. are Ohio entities, and were formed for the purpose of developing BFBF franchises which would be operated in Ohio, these entities were formed as part of the negotiations between BFBF and Jardin Hill. Jardin Hill is not a party to this case. Plaintiffs are not Ohio residents and were not involved in these

5

negotiations. There is no evidence in this record that Defendants initiated a business dealing with an Ohio resident.

As to the location of the negotiations, DiFerdinando explains that he travelled to Ohio on two occasions on behalf of BFBF and engaged in a limited number of email and telephone communications with Terry and Gary Chan. (Doc. 19-1, David DiFerdinando Decl., ¶ 13). The only agreements BFBF entered into were the Development Agreement and the franchise agreement with Jardin Hill. (DiFerdinando Dep. 34-35).

While it appears that the Operations Management Agreement between BWF MGMT, LLC and Boardwalk Fries, LLC was signed by DiFerndinando, DiFerdinando states that he has never owned any interest in, held any position with, taken any action on behalf of, or received any compensation from Boardwalk Fries Opportunities, LP, BWF MGMT, LLC, or Boardwalk Fries, LLC. (DiFerdinando Decl. ¶¶ 17-20). In his deposition, DiFerdinando testified that he did not know why he signed on behalf of Boardwalk Fries, LLC:

> Q: And so why would you sign as an authorized officer of Boardwalk Fries, LLC?
>
> A: Good question. I don't, I don't have an answer for that.

(Doc. 18-1, DiFerdinando Dep. at 111). Regardless of whether DiFerdinando's signature was authorized, merely entering into a contract with a resident of the forum state, without more, does not "automatically establish sufficient minimum contacts," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). To find purposeful minimum contacts with the forum

state, the court must look to "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

Here, the prior negotiations were limited. BWF MGMT, LLC and Boardwalk Fries, LLC did not exist when negotiations began, but were instead were a product of the negotiations between Defendants and Jardin Hill. Moreover, the planned BFBF franchises never materialized. These entities never purchased real estate in Ohio, hired any employees or operated businesses in Ohio. Even if the Court were to find that Defendants transacted business in Ohio, there is nothing in the record to establish that Defendants had sufficient minimum contacts with the forum state. While "Ohio has a legitimate interest in protecting the business interests of its citizens," *Bird v. Parsons*, 289 F.3d 865, 873, 875 (6th Cir. 2002), Plaintiffs are not citizens of Ohio, and Ohio has no legitimate interest in the outcome of this case. Therefore, the Court concludes the facts of this case do not demonstrate that Defendants possess "such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

### III. CONCLUSION

Based on the foregoing, it is hereby **ORDERED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 14) is **GRANTED**; and Defendants' Motion to Stay Discovery Pending Resolution of Motion to Dismiss (Doc. 20) is **DENIED as MOOT**. Plaintiffs' Amended Complaint is dismissed without prejudice.

*Accord Intera Corp. v. Henderson*, 428 F.3d 605, 621 (6th Cir. 2005). This matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                             JUDGE MICHAEL R. BARRETT